**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| FAIR ELECTIONS OHIO, | : | Case No. 1:12-cv-797 |
| THE AMOS PROJECT, | : | |
| CURE-OHIO, CENTRAL OHIO | : | Judge |
| PRISONER ADVOCATES, and | : | |
| COMMUNITY RE-ENTRY, | : | Magistrate Judge. |
| | : | |
| Plaintiffs, | : | |
| | : | COMPLAINT FOR |
| vs. | : | DECLARATORY AND |
| | : | INJUNCTIVE RELIEF |
| JON HUSTED, in his official capacity as | : | |
| Secretary of State of Ohio; | : | |
| MIKE DEWINE, in his official capacity as | : | |
| Attorney General of Ohio; and | : | CLASS ACTION |
| TIMOTHY M. BURKE, in his official capacity | : | |
| as Chair and member of the Hamilton County Board | : | |
| of Elections and on behalf of similarly situated | : | |
| Chairs and members of county boards of elections; | : | |

**PRELIMINARY STATEMENT**

Plaintiffs Fair Elections Ohio, The AMOS Project, CURE-Ohio, Central Ohio Prisoner

Advocates, and Community Re-entry bring this lawsuit to ensure that eligible electors who are

jailed the weekend before Election Day and who remain confined through Election Day are

afforded the right to vote.  Ohio election law, as currently enacted by the State of Ohio and

administered by the Secretary of State and local Boards of Elections, denies these eligible

electors the opportunity to vote by prohibiting them from applying for absentee ballots after noon

on the Saturday before the election.  This statutory scheme, as applied by Defendants to newly

jailed individuals, violates the Equal Protection and Due Process Clauses of the Fourteenth

Amendment of the United States Constitution, the Voting Rights Act, Article I, Section II and

the Seventeenth Amendment of the United States Constitution.  Plaintiffs seek declaratory and

injunctive relief pursuant to 42 U.S.C. §1983 and the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202 against Defendants Ohio Secretary of State Jon Husted; Ohio Attorney General Mike DeWine; Hamilton County Board of Elections chairman Timothy M. Burke; and a defendant class of the remaining 351 members of the Boards of Election of Ohio's 88 counties.

## PARTIES

### The Plaintiffs

1.      Plaintiff FAIR ELECTIONS OHIO ["FEO"] is a nonprofit corporation with members who are electors of the State of Ohio and is also filed with the Secretary of State as a state political action committee that was formed by a coalition of citizens and organizations with a purpose to ensure that election procedures in Ohio foster fair elections that afford all Ohio electors access to voting as a fundamental First Amendment right. FEO has received the financial support of citizens and electors of Ohio who, by contributing to the organization, have participated in advocating for fair elections in Ohio. FEO is co-chaired by Ohio attorney Jennifer Brunner, who served as Ohio Secretary of State from January 2007 through January 2011, during which time, she supervised Ohio's 88 county boards of elections during the 2008 general election. Ohio State Senator Eric H. Kearney, a resident of Hamilton County and minority leader of the Ohio Senate is one of the five (5) members of the petitioning committee of Fair Elections Ohio that proposed and achieved ballot access for a state constitutional referendum on Am. Sub. H.B. 194, a 2011 legislative measure of the Ohio General Assembly that would have thwarted the stated purpose of FEO.  FEO is currently in litigation (Case 2:12-cv-00763-GCS-MRA *Fair Elections Ohio et al v. Husted et al*) with Defendant Husted concerning his failure to place that referendum issue on the November 6, 2012 statewide election ballot, despite it being certified by the Secretary of State as a 2012 statewide referendum ballot issue. The case at issue herein addresses separate

concerns of FEO that are based on the failure of Ohio statutes, directives, instructions, advisories, procedures and practices (hereinafter these collectively may be referred to as "policies") to avoid the creation of an arbitrary preference for one category of votes over another; these concerns are incapable of being addressed by either placing HB 194 on the fall election ballot or the seeking of redress in Case 2:12-cv-00763-GCS-MRA *Fair Elections Ohio et al v. Husted et al.* Accordingly, in order to achieve its mission of ensuring equal voting access for all Ohioans, FEO must divert some of its limited resources to activities aimed at overcoming this additional obstacle to fair and equal voting opportunities.

2.     Plaintiff THE AMOS PROJECT ("AMOS") is a multi-ethnic, multi-racial, and interfaith association of congregations in Greater Cincinnati, working together on issues of racial and economic justice through grassroots community empowerment.  AMOS and its member congregations work to educate and enable citizens to use the tools of democracy – collaborative public advocacy, responsible leadership and informed voting – to transform their community.  In past years, AMOS and its members have registered many Ohio voters and worked to educate voters so that all may cast informed ballots.  AMOS has continued those efforts this year in preparation for the 2012 general election scheduled for November 6, 2012.  AMOS and its member congregations have devoted staff and financial resources toward this end.  As a result of AMOS's understanding that Ohio law and the Hamilton County Board of Elections will deprive eligible voters of the right to vote if they are arrested on or after November 2 and remain in custody on Election Day, AMOS will dedicate a significant portion of its limited staff time and resources this fall to addressing this problem, including by putting additional funds into encouraging and assisting voters to cast early absentee ballots.  If Ohio County Boards of

Elections were not preventing arrested individuals from voting on Election Day, AMOS would be using these limited resources on other organizational priorities.

3.     Plaintiff CURE-OHIO is a non-profit, tax-exempt, prisoner advocacy organization that works to educate the Ohio public and elected leaders about the need for responsible prison management, humane treatment of those incarcerated, fairness in the parole process, training in job and life skills for all Ohio's prisoners, and opportunities for employment, housing, and medical care after release.  CURE-Ohio seeks to accomplish the restoration of Ohio communities by promoting effective rehabilitative and restorative programs in its prisons, as well as effective and less-expensive alternatives to incarceration, including drug treatment.  The membership of CURE-Ohio comprises both organizations and individuals: ministries, halfway houses, educators, and family and friends of prisoners, as well as other citizens from Ohio's communities who are concerned with fairness and justice.  One of CURE-Ohio's current areas of focus is to advocate for equitable process in all stages of criminal justice administration and sentencing so as to eliminate racial and ethnic disproportion in law enforcement.  When recent arrestees are deprived of their opportunity to vote, that deprivation magnifies the impact of racially disparate arrest practices.  If Ohio's present law and practice are allowed to continue, one or more of CURE-Ohio's members is at risk of being disenfranchised in 2012.  Minimizing the extent of disenfranchisement will require intense efforts to assist early in-person voting, at the expense of other CURE-Ohio priorities.

4.     Plaintiff CENTRAL OHIO PRISONER ADVOCATES ("COPA") is a membership organization that advocates for the humane treatment of prisoners and formerly incarcerated individuals.  COPA also educates Central Ohio residents about various prison issues.  COPA members include people who have served time in prisons and jails but who now live in the

community. One of COPA's core tenets is that the United States over-incarcerates its citizens. To that end, one of COPA's goals is to educate its members and the public about which elected officials support policies that contribute to mass incarceration. Encouraging its members and supporters to vote for progressive criminal justice reform candidates is an important part of COPA's work. Because Ohio law does not provide a mechanism for individuals arrested during the weekend before the election to vote if they are still detained through Election Day, one or more of COPA's members or supporters is at risk of being disenfranchised in 2012. Minimizing the extent of disenfranchisement will require intense efforts to assist early in-person voting, at the expense of other COPA priorities and its limited resources.

5. Plaintiff COMMUNITY RE-ENTRY is a 501c-3 nonprofit organization that has been serving Cleveland, Ohio since 1973. Community Re-Entry supports persons returning to the community from incarceration and persons on probation, to reduce recidivism and enhance the quality of life for both the individuals and the community. Community Re-Entry also provides prevention and intervention social services to low-income youth who are at high risk for involvement in drug or gang activity and future incarceration. Community Re-Entry provides education on criminal justice issues which impact its constituency. Community Re-Entry stakeholders include many qualified Ohio electors who have had and/or may have contact with Ohio law enforcement personnel, including numerous individuals who have been arrested or are at risk of future arrest. Having learned that such individuals will be deprived of the right to vote if they are arrested on or after November 2 and remain in custody on Election Day, Community Re-Entry is undertaking to advise and encourage its constituents to avoid any possibility of disenfranchisement by casting early in-person absentee ballots. The necessity of disseminating

this urgent message reduces the resources that Community Re-Entry can devote to existing programs during this pre-Election period.

**The Defendants**

6.     Defendant JON HUSTED ("Secretary of State" or "Defendant") is the current Secretary of State of Ohio and is sued in his official capacity.  In his capacity as Secretary of State, Defendant Husted is the chief elections official of the State and has supervisory control over local election officials. Ohio Rev. Code §§3501.04, 3501.05.  He is  responsible for administering all statewide elections, including for federal office; appointing all members of the state's eighty-eight (88) County Boards of Elections; issuing instructions and promulgating rules for the conduct of elections; publishing manuals of instructions on elections administration for use at polling places; prescribing uniform forms and notices for use in the conduct of elections; instructing county elections officials with respect to election administration and compelling observance; prescribing training of polling place officials; and certifying statewide election results. *Id.*  Upon information and belief, and based on a search of Ohio's voter registration database, Defendant Husted is a resident of Franklin County, Ohio.

7.     Defendant MIKE DEWINE ("Attorney General" or "Defendant") is the current Attorney General for the State of Ohio.  In his capacity as Attorney General, Defendant DeWine is the chief law officer of the State and represents the State of Ohio in all legal matters. Ohio Rev. Code § 109.02.  Upon information and belief, Mike DeWine is a resident of Greene County, Ohio.

8.     Defendant TIMOTHY M. BURKE is currently a member and the chairperson of the Hamilton County Board of Elections.  Defendant Burke is sued in his official capacity as member and chairperson of a County Board of Elections, on his own behalf and as a

representative of all other similarly situated Chairs and members of the Ohio County Boards of Elections.  Defendant Burke is a resident of Hamilton County, Ohio.

9.     Ohio's federal elections are conducted by the state's eighty-eight (88) County Boards of Elections, which are organized pursuant to Ohio Rev. Code §3501.06 and must comply with federal and state election laws, specifically including Ohio Rev. Code §3501.11.  As members of these Boards of Elections, Defendant Burke and other similarly situated members of the Boards throughout the State, are also specifically responsible for performing the Boards' duties that are outlined in Ohio Rev. Code Chapter 3509, concerning absent voter's ballots ("absentee ballots").  These duties include receiving and processing the absentee ballot application of any qualified elector who will be unable to travel to the voting booth on election day "on account of the elector's own personal illness, physical disability, or infirmity, or on account of the elector's confinement in a jail or workhouse under sentence for a misdemeanor or awaiting trial on a felony or misdemeanor." Ohio Rev. Code. §3509.08(A).  Pursuant to Ohio Rev. Code. §3509.08, when a Board of Elections receives an absentee ballot application from an applicant who "is confined to a public or private institution within the county," the Board is required to "designate two board employees belonging to the two major political parties for the purpose of delivering the ballot to the disabled or confined elector and returning it to the board." *Id.*

## JURISDICTION

10.    This action for declaratory and injunctive relief arises under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment to the United States Constitution; Article I, Section 2 of the United States Constitution; the Seventeenth Amendment to the United States Constitution; and the Voting Rights Act of 1965, 42 U.S.C. §1973; 42 U.S.C. §1983.  This Court has subject matter jurisdiction of this action under 28 U.S.C. §§1331, 1343(a)(3)-(4), and 42

U.S.C. §§1971(d).  Plaintiffs' claims for declaratory and injunctive are authorized under 28

U.S.C. §§2201 and 2202.  At all times and in all acts and omissions relevant to this action,

Defendants have acted under color of state law.

**VENUE**

11.     Venue in this district is proper under 28 U.S.C. §1391(b) because Defendants perform their

official duties in this District.  Furthermore, this action is predicated upon a federal question and

a substantial part of the events or omissions giving rise to the claims alleged herein have

occurred, and will continue to occur, in this district.  Finally, individual members and

stakeholders of several Plaintiffs are registered to vote in the district and will be subject in the

district to the unlawful practices described in this Complaint.

12.     Pursuant to S.D. Ohio L. R. 82.1(c), this action should be assigned to the Western Division

of the Southern District of Ohio.  Upon information and belief all of the named Defendants

reside in this District, and at least two Defendants reside in counties within the Western Division

of the Southern District.

**CLASS DEFINITION AND ALLEGATIONS**

13.     Plaintiffs bring this case as a defendants' class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure against a proposed defendant class of "all members of County Boards

of Elections." Defendant Burke (the "County Defendant") is a member of the proposed class of

all members of County Boards of Elections.

14.     This action is appropriately certified as a defendants' class action pursuant to Rule 23 of

the Federal Rules of Civil Procedure because: (i) the class is so numerous that joinder of all

members is impracticable; (ii) there are questions of law or fact common to the class; (iii) the

defenses of the representative party are likely typical of the defenses of the class; (iv) the

representative party will fairly and adequately protect the interests of the class; and (v) injunctive relief and corresponding declaratory relief are appropriate with respect to the defendant class as a whole.

15.    The proposed defendant class is so numerous that separate joinder of each class member is impracticable.  Each of Ohio's 88 County Boards of Elections has four members.  Thus, the proposed class of members of County Boards of Elections consists of 352 individuals.

16.    There are questions of fact and law common to the claims and defenses of the named County Defendants and all members of the Class of members of County Boards of Elections. These questions include, but are not limited to, the following:

(a) Whether Ohio's statute governing absentee voting by confined persons, Ohio Rev. Code §3509.08, is consistent with the U.S. Constitution and federal voting laws;

(b) Whether declaratory relief is appropriate, holding unconstitutional the application of Ohio Rev. Code §3509.08 to disenfranchise qualified electors who are jailed the weekend before Election Day and remain confined through Election Day.

(c) Whether injunctive relief is appropriate, requiring members of the County Boards of Elections to provide a practicable means of voting for all confined voters at least equivalent to that provided for hospitalized persons pursuant to Ohio Rev. Code § 3509.08(B).

17.    The claims or defenses of the named County Defendant are identical to those of all class members.  The named County Defendant, like every other member of the County Boards of Elections, is charged with following Ohio statutory law and Ohio law as interpreted by the Ohio Supreme Court, and with implementing directives of the Defendant Secretary of State.  The named County Defendant, like every other member of every County Board of Elections in Ohio, is statutorily required to provide an absentee ballot for specified persons confined in hospitals on

Election Day but not for otherwise qualified voters who are confined in jails and detention centers between the Friday evening before Election Day and through Election Day. Thus, the defenses of the named defendant are typical of, indeed identical to, that of class members because the named County Defendant and all class members are all charged with implementing the same unconstitutional state law.

18.     The named County Defendant can fairly and adequately represent the interests of the class because his interests are identical to those of class members. As a public official, the named County Defendant will properly defend this action.

19.     Because the predominant thrust of Plaintiffs' claims is that the disenfranchisement of qualified electors confined in jails and detention centers pursuant to Ohio Rev. Code. § 3509.08 is unconstitutional, and because Plaintiffs seek identical relief against each class member, certification of a defendant class is appropriate under Rule 23(b)(1), (2) and/or (3) of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS

20.     The Ohio Constitution provides that every citizen who meets residency requirements and registers to vote 30 days before an election "has the qualifications of an elector, and is entitled to vote at all elections." Ohio Cons. Sec. 1, Art. V. This grant of the franchise is qualified by section 2961.01 of the Ohio Revised Code, which renders a person convicted of a felony "incompetent to be an elector" while incarcerated. Ohio Rev. Code § 2961.01 (A)(1)-(A)(2). Under this statutory scheme, persons who have been convicted of a misdemeanor are not prevented by the law from voting, even if they are incarcerated. Additionally, persons who are in jail on pending charges, whether misdemeanor or felony, for which they are awaiting trial and are not convicted, also have the right to vote.

21.    Despite having this right in theory, as explained below, some qualified electors will be disenfranchised because of Ohio's law and policies.

22.    Voting procedures for pre-trial detainees and jailed convicted misdemeanants are governed by section 3509.08(A) of the Ohio Revised Code. The statute provides that any qualified elector who "on account of the elector's confinement in a jail or workhouse under sentence for a misdemeanor or awaiting trial on a felony or misdemeanor, will be unable to travel from the elector's home or place of confinement to the voting booth in the elector's precinct on the day of . . . election may make application in writing for an absent voter's ballot to the director of the board of elections of the elector's county."   The statute also provides, however, that a detainee's absentee ballot application must be received by the director of elections before "twelve noon of the third day before the day of the election at which the ballot is to be voted."   The Secretary of State has specified that the Saturday deadline is for mailed absentee ballots.  This means that no one arrested on or after the Friday evening before Election Day and kept in custody through Election Day will be able to request an absentee ballot.

23.    It is certain that people will be arrested and admitted to Ohio jails between 6 pm on Friday, Nov. 2 and the close of polls on Tuesday, Nov. 6.  Every day in Ohio, over 650 people are arrested and more than 20,000 are in custody in Ohio jails.  Hamilton County, for example, reported having made 16,186 arrests of adults in 2012, for an average of 44.3 per day.  A review of Hamilton County's online records reveals that from July 2 through October 7, 2012, not a single day passed without someone being admitted to the Hamilton County jails.

24.    Ohio law provides a far more generous procedure, however, for people who encounter medical emergencies shortly before the election.  Ohio Rev. Code § 3509.08(B) sets forth a voting procedure for qualified electors who cannot go to a polling place because of the

hospitalization of the elector or the elector's minor child. In such cases, an elector's written application for an absentee ballot need only be delivered to the director of elections in the elector's county of residence by 3:00 pm on Election Day. On receiving a qualified request, the Board of Elections must either entrust a ballot to a designated family member for delivery, or "arrange for the delivery of an absent voter's ballot to the applicant, and for its return to the office of the board, by two board employees belonging to the two major political parties."

25. If Ohio's counties adhere to Ohio Rev. Code §3509.08, anyone who is arrested on or after 6 pm Friday November 2 and remains in custody through Election Day, and who has not already cast an absentee ballot, will be deprived of the opportunity to vote. Such an arrestee will be prevented from voting --

    (a)    in person at his or her assigned precinct, as a result of being confined;

    (b)    via absentee ballot requested by mail, because there will be no way for the County Board of Elections to receive a ballot request before the prescribed deadline; and

    (c)    via absentee ballot requested in person, because Ohio Rev. Code §3509.08 creates a procedure that enables some confined voters to vote on Election Day, but arbitrarily provides that opportunity only for people confined in hospitals and not for voters confined in jails.

Accordingly, it is inevitable that Defendants will deprive some Ohio citizens of the right to vote by arresting them on or after November 2 and detaining them through Election Day.

26. Although the exact number of electors disenfranchised will vary by county, and the total number may be a small fraction of all the votes cast in Ohio, the burden imposed on each affected elector by this practice is absolute.

27.    In the ordinary course of Ohio law enforcement, persons of color are arrested at a rate that vastly exceeds their representation in the general population.  In Hamilton County, for example, African Americans made up only 25% of the total population in 2010, but they comprised 49.6% of the persons arrested in the county.  Therefore, the deprivation of voting rights caused by application of Ohio Revised Code § 3509.08 is likely to disproportionately reduce the number of votes cast by African-Americans.

28.    Most arrests occur with no prior legal process, which, by its character, denies the necessary due process that must precede a deprivation of the right to vote. Because Ohio law strips voting rights from only those persons who are incarcerated on felony convictions, the fact of an arrest cannot be deemed to be a sufficient state interest or even a justification to ignore the inevitable deprivation of any Ohio elector of his or her right to vote.

29.    Furthermore, American history is replete with examples of citizens being arrested while exercising their constitutional rights to assemble, to speak, and to petition the government. Accordingly, ensuring that mere arrest cannot impose an automatic bar to voting is essential to protect the First Amendment rights at the very core of U.S. democracy.

**FIRST CLAIM FOR RELIEF**
**Severe and Arbitrary Burden on Fundamental Right to Vote in Violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; 42 U.S.C. §1983**

30.    Plaintiffs reallege and incorporate herein by reference each and every allegation and paragraph set forth previously.

31.    Arrestees and convicted misdemeanants who are qualified electors under Ohio law will be jailed between the evening of Friday, November 2, 2012 and Tuesday, November 6, 2012 and will remain in custody through November 6, 2012.

32.    Ohio makes no provisions for these detainees to vote in person, and Ohio's law and policies make it impossible for them to make a timely request for an absentee ballot.

33.    These detainees have a constitutional right to vote; however, Ohio's law and policies make voting a physical impossibility for these detainees.

34.    At the same time, Defendants provide a genuine opportunity to vote for similarly situated confined electors, those hospitalized due to medical emergencies, by allowing them to request an absentee ballot until 3 p.m. on Election Day.

35.    Defendants' imposition of a severe and arbitrary burden on these qualified electors' right to vote violates the Equal Protection Clause of the Fourteenth Amendment.

36.    Defendants' statutory scheme and policies for absentee voting arbitrarily discriminate between two similarly situated categories of confined persons, allowing persons confined in hospitals to vote while denying the vote to electors confined in jails and detention centers, all in violation of the Equal Protection Clause of the Fourteenth Amendment.

37.    Defendants' statutory scheme and policies for absentee voting also discriminate arbitrarily on the basis of wealth, in that Ohio allows in-person voting by arrestees who are able to pay for release on bail while denying the vote to arrestees who lack the financial means to make bail. This type of invidious, wealth-based restriction on the franchise also violates of the Equal Protection Clause of the Fourteenth Amendment.

38.    Defendants' actions are not narrowly tailored to serve a compelling interest.

39.    Defendants' actions, taken under color of state law, deprive Plaintiffs and their members of rights, privileges or immunities secured to them by the Constitution of the United States, in violation of 42 U.S.C. §1983.

**SECOND CLAIM FOR RELIEF**
**Denial of the Fundamental Right to Vote in Violation of the Due Process Clause of the**
**Fourteenth Amendment of the United States Constitution; 42 U.S.C. §1983**

40.    Plaintiffs reallege and incorporate herein by reference each and every allegation and

paragraph set forth previously.

41.    The right to vote is a fundamental right that gives rise to a liberty interest protected by the

Due Process Clause of the Fourteenth Amendment.

42.    Defendants give no notice that voting rights will be denied to arrestees and convicted

misdemeanants who will be jailed between the evening of Friday, November 2, 2012 and

Tuesday, November 6, 2012 and will remain in custody through November 6, 2012.

43.    Defendants afford these qualified electors no opportunity to be meaningfully heard before

denying this fundamental right.

44.    Defendants' denial of the right to vote without notice and an opportunity to be heard

violates detainees' Fourteenth Amendment right to due process.

45.    Defendants' actions, taken under color of state law, deprive Plaintiffs and their members of

rights, privileges or immunities secured to them by the Constitution of the United States, in

violation of 42 U.S.C. §1983.

**THIRD CLAIM FOR RELIEF**
**Election practice resulting in the denial of the right to vote based on race in violation of the**
**Voting Rights Act of 1965, 42 U.S.C. § 1973; 42 U.S.C. §1983**

46.    Plaintiffs reallege and incorporate herein by reference each and every allegation and

paragraph set forth previously.

47.    Section 2 of the Voting Rights Acts prohibits election practices that deny the right to vote

based on race.

48.   African-Americans are most affected by Ohio's denial of the vote to detainees because a disproportionate percentage of African-Americans are arrested and jailed in Ohio.

49.   Ohio's denial of the right to vote violates Section 2 of the Voting Rights Act by disproportionately disenfranchising qualified African-American electors.

50.   Defendants' actions, taken under color of state law, deprive Plaintiffs and their members of rights secured to them by federal law, in violation of 42 U.S.C. §1983.

**FOURTH CLAIM FOR RELIEF**
**The Denial of the Right to Vote in Federal Congressional Elections in Violation of Article 1, Section 2 and the Seventeenth Amendment of the Constitution; 42 U.S.C. §1983**

51.   Plaintiffs reallege and incorporate herein by reference each and every allegation and paragraph set forth previously.

52.   Article 1, Section 2 of the United States Constitution grants qualified state electors the right to vote for members of the United States House of Representatives.

53.   The Seventeenth Amendment grants qualified state electors the right to vote for members of the United States Senate.

54.   On November 6, 2012, elections will be held for seats in the United States House of Representative and in the United States Senate.

55.   Ohio's denial of the right to vote to qualified jailed electors violates Article 1, Section 2 and the Seventeenth Amendment of the Constitution by denying the right to vote in federal elections.

56.   Defendants' actions, taken under color of state law, deprive Plaintiffs and their members of rights, privileges or immunities secured to them by the Constitution of the United States, in violation of 42 U.S.C. §1983.

16

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court order the following relief and remedies:

a) Assume jurisdiction over this action and maintain continuing jurisdiction until Defendants are in full compliance with every order of this Court;

b) Certify a defendant class comprising all members of the Boards of Elections of Ohio's 88 counties;

c) Declare that the provision of the Ohio Revised Code 3509.08 that sets a deadline of Saturday at noon for jailed electors to request an absentee ballot violates the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the United States. Constitution, the Voting Rights Act, Article I, Section 2, and the Seventeenth Amendment of the United States Constitution;

d) Issue a preliminary and permanent order directed to the Defendants, their respective agents, servants, employees, attorneys, successors, and all persons acting in concert with each or any of them, that (a) prohibits them from implementing or enforcing a Saturday at noon deadline for detainees to request an absentee ballot, and (b) requires them to provide a practicable means of voting for all confined voters at least equivalent to that provided for hospitalized persons pursuant to Ohio Rev. Code § 3509.08(B).

e) Issue a preliminary and permanent order ordering Defendant Husted to forthwith notify the state's eighty-eight county boards of elections and the sheriff of each county of the state that all jailed electors and who are placed in custody on misdemeanor charges or convictions and/or upon felony charges between Friday, November 2, 2012 at 6:00 p.m. and Tuesday, November 6, 2012. have the right to vote, and prescribing to Defendant

17

Husted how he shall notify said boards and county sheriffs and further direct said boards

regarding the means by which such rights are to be effected and enforced.

f) Award attorney fees and costs;

g) Grant such other and further relief as this Court may deem necessary or proper.

/s/ David A. Singleton
DAVID A. SINGLETON, trial attorney (0074556)
NGOZI V. NDULUE, *pro hac vice* application pending
(0088851)
PAMELA H. THURSTON (0039467)
Ohio Justice & Policy Center
215 E. 9th Street, Suite 601
Cincinnati, Ohio 45202
513-421-1108 ext. 34
513-562-3200 (fax)
dsingleton@ohiojpc.org
nndulue@ohiojpc.org
phthurston@ohiojpc.org

PATRICK M. QUINN (0081692)
Brunner Quinn
35 North Fourth Street
Suite 200
Columbus, Ohio 43215
(614) 241-5550 Phone
(614) 241-5551 Fax
pmq@brunnerlaw.com